# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:                              )
                                    )
WENDELL GOINS,                      )   Case No. 11-17766-BFK
                                    )   Chapter 7
                    Debtor.         )

## MEMORANDUM OPINION

This matter comes before the Court on an issue of importance in cases converted from

Chapter 13 to Chapter 7: whether the Debtor or the Chapter 7 Trustee is entitled to any

appreciation in property of the estate that accrued post-petition while the case was pending in

Chapter 13. The Debtor in this case filed a voluntary petition under Chapter 13 on October 27,

2011. Docket No. 1. He listed his home with a value of $98,000.00, with a mortgage in the

amount of $107,791.80. Docket No. 10, Schedule A. The Court confirmed the Debtor's

Amended Chapter 13 Plan on June 18, 2012. Docket No. 36. Although the Plan treated certain

homeowners association's liens against the Debtor's property, it did not address any mortgage

arrearages with respect to the property (apparently, there were none).[1]

The Debtor filed a Notice of Voluntary Conversion to Chapter 7 on May 8, 2015. Docket

No. 47. The case was converted to Chapter 7 on May 12, 2015. Docket No. 52.

On July 15, 2015, the Chapter 7 Trustee filed an Application to Employ a real estate

agent in order to sell the Debtor's property. Docket No. 68. The Trustee seeks to list the property

for $147,500.00. Docket No. 69 ¶ 5 (Listing Agreement). The Debtor filed an Objection to the

---

[1]The Debtor filed a separate adversary proceeding to avoid the homeowners association's liens as being wholly unsecured. Adv. Pro No. 12-01186-BFK. This was resolved by the entry of a Consent Judgment Order on July 30, 2012. *Id.*, Docket No. 7.

Trustee's Application and a Motion to Compel the Abandonment of the property. Docket Nos.

70, 71. The Trustee subsequently filed an Opposition to the Debtor's Motion to Compel

Abandonment. Docket No. 78.[2]

The parties stipulated at the hearing that, when the Debtor initially filed his petition under

Chapter 13, the mortgage debt had a balance of approximately $103,000.00. The parties further

stipulated that, as of today, the mortgage debt has a balance of approximately $76,000.00. The

Chapter 7 Trustee agrees with the Debtor that the decrease in the mortgage balance of

approximately $27,000.00 is due to the Debtor's having paid the mortgage during his Chapter 13

case. The Trustee further agrees that the Debtor is entitled to the buildup of equity attributable to

the Debtor's post-petition mortgage payments. The parties disagree, however, on who is entitled

to the equity that accrued as a result of the appreciation of the property during the pendency of

the Debtor's Chapter 13 case. If the Trustee's estimate of value ($147,500.00) is borne out by a

sale, then the mortgage balance of roughly $76,000.00 would be paid, costs of sale would be

paid, the Chapter 7 Trustee would be entitled to a commission, and there would be equity left

over from the sale of the property (after payment of the aforementioned $27,000.00 to the

Debtor). The Trustee properly further concedes that if the equity attributable to post-petition

appreciation is payable to the Debtor, then the creditors would not benefit from a sale of the

property, and the Debtor's Motion to Compel Abandonment should be granted.[3]

---

[2] Section 554(b) of the Code provides:

> On request of a party in interest and after notice and a hearing, the court may order the trustee to
> abandon any property of the estate that is burdensome to the estate or that is of inconsequential
> value and benefit to the estate.

11 U.S.C. § 554(b).

[3] Using round numbers, if the property were to sell for $147,500.00, there would be a 6% real estate commission
($8,850), the Debtor would be entitled to $27,000.00, there would be other costs of sale of up to 5% ($7,375), the

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), and (N) (orders approving the sale of property).

   A.   *Bankruptcy Code Section 348(f)(1), Pre-BAPCPA.*

Prior to its amendment in 2005, Bankruptcy Code Section 348(f)(1) read as follows:

> Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> (A) property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor on the date of conversion; and
>
> (B) valuations of property and of allowed secured claims in the chapter 13 case *shall apply in the converted case*, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.

11 U.S.C. § 348(f)(1) (pre-BAPCPA) (emphasis added).[4]

The legislative history to Section 348(f) states as follows:

> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 . . . , any property acquired after the petition becomes property of the estate, at least until confirmation of the plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

---

mortgage of $76,000.00 would be paid, and the Trustee would be entitled to a statutory commission of $10,625.00, leaving approximately $17,650.00 either for distribution to the creditors or to be returned to the Debtor as his post-petition equity. The Debtor did not claim an exemption in the property.

[4] Section 348(f)(2) makes an exception for debtors who are found to have converted their cases in bad faith; if so, property of the estate includes all property as of the date of the conversion. 11 U.S.C. § 348(f)(2). There is no suggestion that the Debtor in this case converted his case in bad faith.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

H.R. Rep. No. 103–835 at 57 (1994), *as reprinted* in 1994 U.S.C.C.A.N. 3340, 3366.

A number of pre-BAPCPA case law held that the debtor was entitled to any post-petition appreciation in his or her property. These cases usually relied on the theory that confirmation of the debtor's Chapter 13 Plan constituted an implicit finding that the property had the value ascribed to it in the debtor's Schedules and Plan. *Warren v. Peterson*, 298 B.R. 322 (N.D. Ill. 2003); *In re Niles*, 342 B.R. 72 (Bankr. D. Ariz. 2006); *In re Slack*, 290 B.R. 282 (Bankr. D. N.J. 2003); *In re Page,* 250 B.R. 465 (Bankr. D. N.H. 2000).

Two cases rejected the "implicit finding of value" approach, but ended up in the same place: the courts used the Chapter 13 filing date, not the date of conversion, for purposes of valuation in the converted Chapter 7 case. *In re Lynch*, 363 B.R. 101, 106 (B.A.P. 9th Cir. 2007) (rejecting the implicit finding approach, but holding that "the relevant valuation date for purposes of § 348(f)(1)(B) is the chapter 13 filing date"); *In re Jackson*, 317 B.R. 511, 518 (Bankr. N.D. Ill. 2004) ("Creditors would be entitled to the equity that existed at the beginning of the chapter 13 case while debtors retain appreciation that occurs during the chapter 13 case.")[5]

---

[5] A number of pre-BAPCPA cases also held that the Debtor is entitled to any equity buildup resulting from the payment of his or her mortgage or other secured debt during the course of the Chapter 13 case. *See In re Burt*, No. 01-43254-JJR-7, 2009 WL 2386102, at *1, *6 (Bankr. N.D. Ala. July 31, 2009); *In re Sparks,* 379 B.R. 178 (Bankr. M.D. Fla. 2006); *In re Pruneskip*, 343 B.R. 714 (Bankr. M.D. Fla. 2006). Other cases held to the contrary, that the debtor is not entitled to equity resulting from post-petition payments on secured debt. *See In re Peter*, 309 B.R. 792 (Bankr. D. Or. 2004); *In re Wegner*, 243 B.R. 731 (Bankr. D. Neb. 2000). As noted above, the Trustee in this case

4

B. *The 2005 Amendment to Section 348(f)(1)(B), and The Post-BAPCPA Case Law Under Section 348(f).*

In 2005, Congress amended Section 348(f)(1)(B), as part of the Bankruptcy Abuse

Prevention and Consumer Protection Act (BAPCPA) Amendments to the Code. As a result,

Section 348(f)(1)(B) now reads:

> valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, *but not in a case converted to a case under chapter 7,* with allowed secured claims in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan[.]

11 U.S.C. § 348(f)(1)(B) (emphasis added).

The legislative history from the BAPCPA Amendments states as follows, with respect to

the amended Section 348(f)(1)(B):

> **Sec. 309.** *Protecting Secured Creditors in Chapter 13 Cases.* Section 309(a) of the Act amends Bankruptcy Code section 348(f)(1)(B) to provide that valuations of property and allowed secured claims in a chapter 13 case only apply if the case is subsequently converted to one under chapter 11 or 12. If the chapter 13 case is converted to one under chapter 7, then the creditor holding security as of the petition date shall continue to be secured unless its claim was paid in full as of the conversion date. In addition, unless a prebankruptcy default has been fully cured at the time of conversion, then the default in any bankruptcy proceeding shall have the effect given under applicable nonbankruptcy law.

H.R. Rep. No. 109-31(I), at 73 (2005), *as reprinted* in 2005 U.S.C.C.A.N. 88, 140.

One commentator has suggested that the purpose of the 2005 amendment was to protect

secured creditors from the effect of any bifurcation of their liens that may have occurred during

the course of the Chapter 13 case. David G. Carlson, *"Cars and Homes in Chapter 13 After the

2005 Amendments to the Bankruptcy Code,"* 14 Am. Bankr. Inst. L. Rev. 301, 385 (Winter

2006).

---

does not dispute that the Debtor is entitled to the equity resulting from the Debtor's post-petition mortgage payments.

There have not been many post-BAPCPA cases interpreting the amended version of Section 348(f)(1)(B). The case of *In re Robinson*, 472 B.R. 854 (Bankr. M.D. Fla. 2012), involved equity that accrued in the debtors' vehicles as a result of payments made to secured creditors under a confirmed Chapter 13 plan. The court, relying on the pre-BAPCPA cases of *Burt* and *Pruneskip*, held that the equity in the vehicles attributable to the debtors' post-petition payments belonged to the debtors. *Id.*, at 857. The court noted that "[t]he legislative history of the 1994 amendments to section 348(f) indicates that debtors are to be encouraged to make payments in Chapter 13 rather than filing under Chapter 7, and that they should not be penalized for attempting to repay their debts in Chapter 13 even though they may later find it necessary to convert to a Chapter 7 case." *Id.*, at 856.

The case of *In re Hodges*, 518 B.R. 445 (Bankr. E.D. Tenn. 2014), like *Robinson*, involved equity built up in the debtors' residence as a result of payments made to their mortgagee during the Chapter 13 case. The court in *Hodges* first noted that "although § 348(f)(1)(B) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), because the issue in this case is controlled by § 348(f)(1)(A), which was not amended by BAPCPA, the Court may rely on cases construing § 348(f)(1)(A) before BAPCPA came into effect." *Id.*, at 448. The court further noted that post-BAPCPA Section 348(f)(1)(B) "addresses the rights of a *secured creditor* in the context of valuation of specific property at the end of the Chapter 13 bankruptcy." *Id.*, at 450 (emphasis in original). The court held that the issue was "squarely answered by § 348(f)(1)(A) and the case law interpreting it," and therefore, the debtors were entitled to the post-petition equity created by the mortgage payments made in the Chapter 13 case. *Id.*, at 451.

6

The Trustee in this case relies on the case of *In re Martinez,* No. 7-10-11101 JA, 2015 WL 3814935, at *1 (Bankr. D. N.M. June 18, 2015), which involved a Debtor's motion for avoidance of a judicial lien under Section 522(f) of the Code. In *Martinez*, the debtor and the judicial lien creditor stipulated to a valuation of the property while the Debtor was in Chapter 13 and was attempting to avoid the lien. *Id.*, at *2. The debtor's efforts were unsuccessful, because the court found that the debtor was not entitled to the exemption claimed in the property (and, therefore, the judicial lien did not impair an exemption to which the debtor was entitled). *Id.*, at *3. The court confirmed the debtor's Chapter 13 plan, which provided for the payment of an allowed secured claim in favor of the creditor. *Id.*, at *3. The debtor later converted his case to one under Chapter 7. *Id.* The debtor then amended his schedules, and again sought to avoid the judicial lien pursuant to Section 522(f). *Id.* The court held that the creditor could not hold the debtor to the stipulated value from the Chapter 13 phase of the case, owing to Section 348(f)(1)(B)'s plain language. The court also found the language of the stipulation to be ambiguous, and held that the parties would be entitled to an evidentiary hearing on whether the debtor "knowingly and intentionally" waived the protections of Section 348(f)(1)(B). *Id.*

The Court finds the *Martinez* case to be distinguishable from the current case because *Martinez* involved a motion to avoid a judicial lien under Section 522(f). *See Martinez,* 2015 WL 3814935, at *1. The relevant statute directs that valuation for purposes of judicial lien avoidance be made "as of the date of the filing of the petition." *See* 11 U.S.C. § 522(a)(2) ("value" means "fair market value as of the date of the filing of the petition"). There is no similar language in Section 348, regarding the valuation of property – only Section 348(f)(1)(A)'s direction that property of the estate consists of property as of the time of the petition, not the time of conversion. *See* 11 U.S.C. § 348(f)(1)(A) ("property of the estate in the converted case shall

7

consist of property of the estate, as of the date of filing petition"). The opinion in *Martinez* also

relied on redemption cases under Section 722. *See Martinez*, 2015 WL 3814935, at *6, citing *In re Nance*, No. 07-81057, 2013 WL 2897527, at *1, *2 (Bankr. M.D. N.C. June 12, 2013), and *In re Airhart*, 473 B.R. 178, 185 (Bankr. S.D. Tex. 2012). The Section 722 redemption cases look

to Section 506(a)(2) of the Code for the valuation standard. Section 506(a)(2) specifically

requires the court to look to replacement value of the property "as of the date of the petition." 11

U.S.C. § 506(a)(2). Other than *Martinez,* which the Court finds to be distinguishable for the

reasons stated, there do not appear to be any post-BAPCPA cases directly addressing post-

petition appreciation in property of the estate.

> C. *The Estate is Entitled to any Post-Petition Appreciation in the Property Pursuant to Bankruptcy Code Section 541(a)(6).*

This brings the Court back to the issue: which party is entitled to the post-petition

appreciation of the property? The Trustee argues that the 2005 amendment to Section

348(f)(1)(B) did away with any notion of implicit valuation as a result of confirmation in a

Chapter 13 case, because Section 348(f)(1)(B) now expressly provides that valuations from

Chapter 13 do not carry over into converted Chapter 7 cases. The Court finds in favor of the

Trustee here, but not because the 2005 amendment to Section 348(f)(1)(B) legislatively

overruled the implicit valuation cases. *See* 11 U.S.C. § 348(f)(1)(B). Rather, the Court agrees

that the Trustee is entitled to the post-petition appreciation in the property because the real estate

was *always* property of the estate under Section 541(a) of the Code. Section 541(a)(1) broadly

defines property of the estate to include "all legal or equitable interests of the debtor in property

as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. §

541(a)(1). Further, Section 541(a)(6) provides that all "proceeds, product, offspring, rents or

8

profits of or from property of the estate" constitutes property of the estate. 11 U.S.C. § 541(a)(6).

Numerous cases relying on Section 541(a)(6) have held that post-petition appreciation in

property belongs to the estate. *See In re Hyman,* 967 F.2d 1316 (9th Cir.1992); *In re Reed,* 940

F.2d 1317, 1323 (9th Cir.1991) ("appreciation [i]nures to the bankruptcy estate, not the debtor");

*In re Potter*, 228 B.R. 422, 424 (8th Cir. B.A.P. 1999) ("Except to the extent of the debtor's

potential exemption rights, post-petition appreciation in the value of property accrues for the

benefit of the trustee"); *In re Moyer,* 421 B.R. 587, 594 (Bankr. S.D. Ga. 2007); *In re Shipman*,

344 B.R. 493, 495 (Bankr. N.D. W.Va. 2006) ("the trustee is entitled to any post-petition

appreciation in value of the property"); *In re Bregni,* 215 B.R. 850, 854 (Bankr. E.D. Mich.

1997); *In re Paolella,* 85 B.R. 974, 977 (Bankr.E.D.Pa.1988) ("Because sale does not generally,

if ever, occur simultaneously with formation of a bankruptcy estate, § 541(a)(6) mandates that

the estate receive the value of the property at the time of the sale. This value may include

appreciation or be enhanced by other circumstances creating equity which occur postpetition").

There is an irreconcilable conflict between these cases, which look to Section 541(a)(6),

and the cases cited in Part A above (*Warren v. Peterson*, *In re Slack*, *In re Niles*, and *In re Page*),

which look to Section 348(f)(1)(A) for the answer.  In the Court's view, the cases under Section

541(a)(6) are applicable because the equity attributable to the post-petition appreciation of the

property is not separate, after-acquired property, to which we might look to Section 348(f)(1)(A).

The equity is inseparable from the real estate, which was always property of the estate under

Section 541(a).

The example in the legislative history to Section 348 ("a debtor who had $10,000 equity

in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would

have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage

in the chapter 13 case, creating $10,000 in equity. . . ") arguably sheds light on the "paydown"

cases, i.e., the cases where the Debtor creates equity by paying down secured debt during the

course of the case. *See* H.R. Rep. No. 103–835 at 57 (1994), as reprinted in 1994 U.S.C.C.A.N.

3340, 3366. It is not helpful, however, in determining which party, the Debtor or the Trustee, is

entitled to the equity created by appreciation of the property while the Debtor is in Chapter 13.

For the foregoing reasons, the Court holds that the Debtor is not entitled to the

appreciation in his property that accrued during the course of his Chapter 13 case, and the

Trustee is entitled to sell the property.

### Conclusion

For the foregoing reasons, the Court will enter a separate Order under which:

1.      The Trustee's Motion for appointment of a real estate agent will be granted.

Counsel for the Trustee will submit an Order approving the employment of the real estate agent

within ten days.

2.      The Debtor's Motion to compel an abandonment of the property will be denied.

Counsel for the Trustee also will submit an Order denying the Debtor's Motion within ten days.

The Clerk will mail copies of this Memorandum Opinion, or will provide cm-ecf notice

of its entry, to the parties below.

Date:_____Oct 15 2015_____        /s/ Brian F. Kenney
                                        _____
                                        Honorable Brian F. Kenney
                                        United States Bankruptcy Judge

                                        eod 10/15/2015

10

Copies to:

Wendell Goins                           Gregory H. Counts, Esquire
9125 Portner Ave.                       Tyler, Bartl, Ramsdell & Counts, PLC
Manassas, VA 20110                      300 North Washington St. Suite 202
*Chapter 7 Debtor*                      Alexandria, VA 22314-4252
                                        *Counsel for Chapter 7 Trustee*

Scott J. Newton, Esquire
Manassas Law Group, PC
9255 Lee Avenue
Manassas, VA 20110
*Counsel for Chapter 7 Debtor*